In re Harold Jean
**BURKHART, Debtor(s).**

**Bankruptcy No. 87–04676.**

United States Bankruptcy Court,
N.D. Florida,
Pensacola Division.

Aug. 24, 1988.

Charles Wynn, Marianna, Fla., for trustee.

John E. Venn, Jr., Gulf Breeze, Fla., for debtor.

## MEMORANDUM OPINION ON OBJECTION TO CONFIRMATION

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

■ THIS MATTER came on for hearing on confirmation of the debtor's Chapter 13 plan. The standing Chapter 13 trustee represented to the Court that the debtor was current on the payments called for in the plan at the time of the hearing and that the plan appeared to be feasible; however, the trustee objected to confirmation on the basis that the plan provided for the debtor to pay his secured creditors directly and thus avoid the payment of a trustee's commission on those payments.[1] The debtor contends that the Bankruptcy Code allows him to act as disbursing agent for the payments on his home mortgages and that the trustee's fee should be computed only on the payments received by the trustee. This Court has frequently in the past allowed Chapter 13 debtors to pay their secured creditors directly and thus avoid paying a trustee's fee on those payments. Having reexamined its position on this issue, the Court now affirms its stance and concludes that a trustee's fee must be paid only on those payments received by the trustee and that the Court has the discretion to determine which claims may be paid directly by the debtor.

The debtor has five unsecured creditors with total claims of $5,387.37 and three secured creditors, all of whom have mortgages on his principal residence, with total claims of $74,500.00. The debtor is in default in the amounts of $2,610.00, $6,106.32, and $2,481.30 to the first, second, and third mortgage holders respectively. The debtor's plan proposes, pursuant to 11 U.S.C. § 1322(b)(5), to cure the defaults and maintain current payments on his secured debts during the pendency of the case. The debtor's current monthly mortgage payments total $1,016.70. The plan provides for the debtor to cure each of the three mortgages over 18 months by making additional monthly payments of $145.00 on the first mortgage, $340.00 on the second mortgage, and $137.85 on the third mortgage bringing the total arrearage payments under the plan to $622.85 per month. The plan provides that both the arrearage and the current payment are to be made directly to the three mortgage holders. The debtor further proposes to pay $400.00 per month to the trustee for 18 months to pay all other allowed claims, including administrative expenses, in full. Article 4.1 of the plan provides that, "The trustee's fees and expenses shall be paid in accordance with the Rules of Bankruptcy Procedure and the Bankruptcy Code...."

■ The first question is whether or not and to what extent the debtor may act as disbursing agent for payments under the plan. Section 1322(a)(1) of the Bankruptcy Code provides that, "The plan shall provide for the submission of all or such portion of future earnings or other income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." Section 1326(c) provides that, "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan." The Bankruptcy Code thus contemplates that the trustee will act as the disbursing agent in most instances. It nonetheless clearly envisions that there will be exceptions. In *Matter of Foster*, 670 F.2d 478 (5th Cir.1982), the Fifth Circuit concluded, based upon the foregoing statutory language, that, "... Chapter 13 permits a debtor to act as disbursing agent,

---

**1.** This troublesome issue has continued to emerge since the inception of the Bankruptcy Code. Unfortunately, it appears very often to be a case of the tail wagging the dog. Debtors with otherwise confirmable plans have spent an inordinate amount of effort simply trying to avoid what appears to be a windfall fee to the trustee, and, as often as not, the only objection by the trustee to confirmation of the debtor's plan is over the amount of the fee.

subject to the bankruptcy court's 'feasibility' determination under 11 U.S.C. § 1325(a)(6)." *Id.* at 486; *e.g., In re Tartaglia,* 61 B.R. 439 (Bankr.D.R.I.1986); *In re Hines,* 7 B.R. 415 (Bankr.D.S.D.1980); *In re Wittenmeier,* 4 B.R. 86 (Bankr.M.D. Tenn.1980). In *Foster* the debtors were delinquent on two mortgages on their home. Their plan proposed to pay the arrearage payments to cure the mortgages to the trustee and to pay the current payment directly to the creditor. The Court went on to say that:

> ... we believe that the intent of Congress to enhance the flexibility of debtors in formulating plans under Chapter 13 should be given strong consideration by a bankruptcy court in deciding whether to allow the debtor to serve as disbursing agent *for the current mortgage payments,* we also believe that the provisions of Chapter 13 make it clear that the designation of the debtor as such a disbursing agent is very much a matter left to the considered discretion of the bankruptcy court.
>
> ....
>
> If the bankruptcy court concludes that the debtor's acting as disbursing agent with respect to *current mortgage payments* will not impair the debtor's ability to make all payments under, and to comply with, the plan, then the court is obligated to confirm the plan, assuming it complies in all other respects with § 1325(a).

*Id.* at 486, 487 (emphasis added). In *Hines* the court explained that:

> There are valid reasons for a debtor to continue making payments directly to creditors holding mortgages on a debtor's homestead property. Long after the Chapter 13 plan has expired a debtor is usually still making payments on the mortgage. The code contemplates that such an event will occur. It would be ridiculous to have debtors subject the mortgage payments to the trustee for the term of the plan and then have to go through the process of picking the payments up again.

*Hines,* supra at 421. This Court agrees. The debtor continues to make the current payment pursuant to the terms of the original agreement between the parties. Neither the amount of the payment nor the term of payment are affected by the plan. In fact, it may very well be to the secured creditor's benefit continue to receive and account for the payment in its usual fashion—the mechanics are already in place and need not be altered. Therefore, the debtor should be allowed to disburse the current mortgage payment on his home directly to the secured creditor in most instances.

Arrearage payments, on the other hand, should be paid to the trustee to disburse. As heretofore explained, absent any exception, the trustee should act as disbursing agent for payments under the plan. While there are sound reasons to except the current payment from the trustee's control, the debtor in this case has not advanced, nor has the Court found, any reason to create an exception for the arrearage payments. The debtor's ability to cure the default on a home mortgage is frequently the heart of a Chapter 13 plan. The arrearage payments are temporary and catch-up in nature, and they typically are accounted for separately by the secured creditor. The trustee can disburse the arrearage payment without interfering with the established debtor-creditor relationship, and, furthermore, in so doing the trustee is thereby able to continue to monitor the debtor's compliance with the plan.

With regard to the Court's determination of feasibility, it has been this Court's experience that whether or not the debtor is allowed to act as the disbursing agent has little to do with the debtor's actual ability to comply with the plan. Chapter 11 debtors (and Chapter 13 debtors in this district) have always made direct payments to creditors without posing any difficulty for the creditors, the Court, or the debtor himself. *In re Erickson Partnership,* 77 B.R. 738, 748 (Bankr.D.S.D.1987). (Although this was a Chapter 12 case, the relevant provisions in Chapter 12 and Chapter 13 are identical). The question is more one of enforceability rather than feasibility, and, in that regard, the Court foresees little

problem. "[A] creditor holding a mortgage is usually quite capable of looking after its own interest." *Hines,* supra. Therefore, unless the trustee or the affected creditor has some justifiable objection, the Court will continue to allow the debtor disburse the current payment where the plan so provides.

Next the Court must consider the question of how the Chapter 13 trustee's fees should be computed. The debtor maintains that the trustee's fee should be paid only on the payments actually received by the trustee. Former Section 1302(e) of the Bankruptcy Code[2] provided in pertinent part that:

(e)(1) A Court that has appointed an individual under subsection (d) of this section to serve as standing trustee in cases under this chapter shall [fix] set for such individual—

(A) a maximum annual compensation, not to exceed the lowest annual rate of basic pay in effect for grade GS–16 of the general schedule prescribed under section 5332 of title 5 and

(B) a percentage fee, not to exceed ten percent, based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee.

(2) Such individual shall collect such percentage fee from all *payments under plans* in the cases under this chapter for which such individual serves as standing trustee. (emphasis added)

Resolution of the trustee's fee issue under Section 1302(e) turned on which payments were construed by the Court to be "under the plan." The majority of courts which considered the question reached the conclusion that, where the debtor's plan proposes to cure the default and maintain current payments on a secured claim pursuant to 11 U.S.C. § 1322(b)(5), the current payments are "under the plan," and the trustee's fee should be computed on those payments irrespective whether the debtor or the trustee makes the actual disbursement. *E.g., Foster,* at 491; *In re Hankins,* 62 B.R. 831 (Bankr.W.D.Va.1986); *see In re Case,* 11 B.R. 843 (Bankr.D.Utah 1981); *In re Centineo,* 4 B.R. 654 (Bankr.D.Neb. 1980).[3]

The fees of the standing Chapter 13 trustees are now fixed by the Attorney General pursuant to 28 U.S.C. § 586(e). Section 586(e)(2), which was amended by The Bankruptcy Act of 1986, *supra* at note 1, currently provides as follows:

(2) Such individual shall collect such percentage fee from all payments *received by such individual* under plans in cases under chapter 12 or 13 of title 11 for which such individual serves as trustee. (emphasis added).

The only difference, albeit a significant one, between Section 1302(e)(2) and amended Section 586(e)(2) is the addition of the words "received by such individual." Given the fact that the Court has the discretion to decide which payments will in fact be received by the trustee, it is readily apparent that the new language shifts much of the emphasis away from the question of which payments are "under the plan." At least one court has held that the new language of 586(e)(2) has overruled *Foster* and that line of cases to the extent that they hold that the trustee is entitled to a fee on all payments under the plan. *In re Wright,* 82 B.R. 422 (Bankr.W.D.Va. 1988); *see Erickson Partnership, supra,* (as previously mentioned, this is a Chapter 12 case; however, the relevant statutory

---

**2.** 11 U.S.C. § 1302 was amended by the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. 99–554, § 228(2) [hereinafter cited as the "Bankruptcy Act of 1986"] which deleted subsections (d) and (e). Pursuant to those subsections, the Court carried the responsibility of appointing and fixing the fees of the standing Chapter 13 trustees. Those functions have now been assumed by the United States Trustee pursuant to 28 U.S.C. §§ 586(b), (d), and (e) as amended by

sections 113(b) and (c) of the Bankruptcy Act of 1986, *supra.*

**3.** Section 1302(e) was not applicable to cases pending in the pilot United States Trustee districts. The language of 28 U.S.C. § 586(e) which did apply was, nonetheless, identical to that of section 1302(e), and the cases decided thereunder reached the same conclusion. *In re Tartaglia,* 61 B.R. 439 (Bankr.D.R.I.1986).

provisions are identical). In *Wright* the Court stated that, "[t]hough the legislative history is silent as to why the rules were changed to alter the collection practices of the Chapter 13 trustee, the plain meaning of the words makes it clear that the trustee is to collect commissions only on monies actually received by the trustee pursuant to the plan." *Wright, supra* at 423. Likewise, in *Erickson Partnership,* the Court reasoned that, "[t]he plain language of the amendment within the context of that provision militates a finding that if the farmer-debtor is entitled under the Code to make payments directly to certain creditors, then because they are not 'received' by the Trustee, they are not subject to the fee." *Erickson Partnership, supra* at 751. The reasoning of these cases is compelling, particularly in light of fact that this is also the position taken by the United States Trustee's office. *Erickson Partnership, supra* at note 15. Accordingly, this Court holds that, where the debtor's plan provides for, and the Court approves, payments directly to a secured creditor, the trustee is not entitled to a commission on those payments.

Historically the number of Chapter 13 cases filed in this district has been relatively small; therefore, the Court never sensed the need to appoint a standing trustee.[4] Chapter 13 cases were assigned to the panel trustees on a case by case basis pursuant to 11 U.S.C. § 1302(a); consequently, their fees were fixed pursuant to 11 U.S.C. § 326(b) rather than 11 U.S.C. § 1302(e). Under Section 326(b), the Court could allow the trustee reasonable compensation not to exceed the maximum allowable percentage of five percent on all payments under the plan. The standing Chapter 13 trustee's fees are currently fixed, pursuant to 28 U.S.C. § 586(e)(1)(B)(i), at the maximum allowable, flat rate of ten percent in all cases. It appears then that the reduced amount upon which the percentage is com-

puted as a result of the Court's holding in this case may be more than offset by the increase in the percentage.

As noted above, under the prior law the Court fixed the fee and saw to it that the fee was reasonable and commensurate with the work performed by the standing Chapter 13 trustee. *Foster, supra* at 492; *Case, supra* at 847; *In re Eaton,* 1 B.R. 433 (Bankr.M.D.N.C.1979); *see* 5 King, *Collier on Bankruptcy* ¶ 1326.01[3] (15th ed. 1988). Any excess fees collected by the trustee were turned over to the United States Treasury. 11 U.S.C. § 1302(e)(2). The fee is now set by the Attorney General, after consultation with the United States trustee, and any excess is paid to the United States trustee to be deposited in the United States Trustee System Fund. 28 U.S.C. § 586(e). These fees are not reviewable by the Court on a case by case basis.[5] *In re Savage,* 67 B.R. 700 (D.R.I. 1986). The Court must admit, however, that it has some misgiving about the current statutory scheme.

■ In summary, the Court holds that the debtor may disburse the current portion of his home mortgage payments directly to his secured creditors while the arrearage payment must be paid to the trustee for disbursement. The trustee may collect his percentage trustee's fee only on those payments actually received by the trustee.

A separate order shall be entered herewith.

## ORDER ON OBJECTION TO CONFIRMATION

In accordance with the opinion entered herewith, it is

ORDERED AND ADJUDGED that the trustee's objection to confirmation is granted to the extent that it objects to the treatment of the arrearage payments provided for in the debtor's plan and denied to the

---

**4.** From 1980 through 1987, there was an average of 74 Chapter 13 cases filed in this district per year. Those cases were spread between four divisions for an average of 18.5 cases per division per year.

**5.** The Court does not address the question of whether or not it has the power, on the other hand, to scrutinize the fee structure itself and the method by which the percentage has been set to determine whether or not the legislative intent of Congress has been properly implemented.

extent that it objects to the treatment of the debtor's current payments on his secured claims. The debtor shall pay all arrearage payments to the trustee for disbursement to the secured creditors. The debtor shall act as disbursing agent for the current portion of his mortgage payments which shall be paid by him directly to each secured creditor. The trustee's percentage fee shall be computed on the payments actually received by the trustee.

DONE AND ORDERED.